**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDDIE B. MILAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-2676** |
| | : | |
| **BRIAN DEVER,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**MCHUGH, J.**                                              **NOVEMBER  20, 2020**

This matter comes before the Court by way of a Complaint (ECF No. 2) brought by

Plaintiff Eddie B. Milan, proceeding *pro se*.  Also before the Court are Milan's Motion for Leave

to Proceed *In Forma Pauperis* (ECF No. 1), his Prisoner Trust Fund Account Statement (ECF

No. 4), and his Motion to Appoint Counsel (ECF No. 3).  Because it appears that Milan is unable

to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For

the following reasons, the Complaint will be dismissed with prejudice in part and without

prejudice in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) with respect to certain claims.

Milan's remaining claims will be stayed pending resolution of the underlying criminal case in

state court.  Milan's Motion to Appoint Counsel will be denied without prejudice.

**I.      FACTUAL ALLEGATIONS**[1]

Mr. Milan, a prisoner currently incarcerated at Chester County Prison, brings this civil

rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights

based on an alleged illegal stop, police pursuit, false arrest, excessive force, and malicious

---

[1]  The factual allegations set forth in this Memorandum are taken from Milan's Complaint (ECF
No. 2) and the documents and exhibits attached thereto.

prosecution.  (ECF No. 2 at 3, 5.)[2]  In the Complaint, Milan names the following entities as

Defendants: (1) the Oxford Borough Police Department ("OBPD"); (2) the West Fallowfield

Police Department ("WFPD"); and (3) the Avondale State Police Barracks ("ASPB").  (*Id.* at 2.)

Milan also names multiple individuals as Defendants, all of whom are law enforcement officers:

(1) Officer Brian Dever of the OBPD; (2) Officer Devlin[3] of the OBPD; (3) Corporal Eric

Hughes of the WFPD; (4) Officer Lowrey;[4] (5) Corporal James Wisnieski of the ASPB; (6)

Officer John Doe Number 1[5] of the New Garden Township Police Department; (7) Officer John

Doe 2 of the New Garden Township Police Department; (8) Officer John Doe Number 3 of the

ASPB; and (9) Officer John Doe Number 4 of the ASPB.  (*Id.*)  Milan seeks to sue all

Defendants in both their individual and official capacities.  (*Id.*)

     Mr. Milan alleges that on or about August 20, 2019, he was in a car that was "parked in

the parking area" of a garage belonging to his friend, an individual by the name of Roy Hill.  (*Id.*

at 3.)  Milan claims that he is the owner of a Craftsman riding lawn mower that was also parked

near Hill's garage, in the area of Pine and Myrtle Streets in Oxford, Pennsylvania.  (*Id.*)  Milan

alleges that he went to Hill's garage specifically seeking Hill's assistance to tow the lawn mower

from Hill's garage to Milan's storage area because Hill "had a trailer and [Milan] did not."  (*Id.*)

According to Mr. Milan, after he arrived at Hill's residence, he walked up and knocked on both

---

[2]  The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Milan's Complaint does not set forth the first name of Officer Devlin.  (*Id.* at 2.)

[4] With respect to this Defendant, Milan does not provide a first name and states that he does not
know which police department employs this officer. (*Id.*)

[5] Milan separately lists two John Doe Defendants from the New Garden Township Police
Department and two John Doe Defendants from the Avondale State Police Barracks.  The Court
has added the numerical designations 1 through 4 to the John Doe Defendants' names and titles
to clearly identify the claims against them.

the front and the back doors, but no one answered at either door.  (*Id.*)  Milan claims he then

went back to his car and waited approximately ten minutes before leaving the premises,

presumably because he was unsuccessful in obtaining Hill's assistance in towing the lawn

mower.  (*Id.*)

After leaving Hill's residence and the garage area, Milan alleges that he pulled out onto

Myrtle Street and started driving to his sister's home when, "approximately four minutes later,"

he heard police sirens and looked in the rearview mirror.  (*Id.* at 4.)  Milan asserts that when he

looked in the rearview mirror, he believed that he saw Defendant Officer Brian Dever in the

police vehicle behind him.[6]  (*Id.*)  According to Milan, Officer Dever "had previously held a gun

to [Milan's] head in 2003, while [Dever was] in . . . [Milan's] home during [the course of] an

arrest."  (*Id.*)  As a result of seeing an individual he believed to be Dever, Milan alleges that he

"was in fear for his safety and under duress" which caused him to flee "to a public area" –

namely the parking lot of a Giant grocery store.  (*Id.*)  However, Milan contends that before he

arrived at the Giant grocery store, a "multitude of police vehicles . . . accumulated behind him"

and that the "conduct of these police vehicles were [sic] aggressive[.]"  (*Id.*)  Milan alleges that

as a result of this "aggressive" conduct by the police vehicles, he felt even "more unsafe . . . so

he continued on to his sister's house after going through the Giant parking lot."  (*Id.*)

According to Mr. Milan, at some point during the course of this vehicle pursuit, Milan

"drove over spike strips deployed by police officers which blew his tires out[.]"  (*Id.* at 5.)  As a

result, Milan "pulled up into the closest driveway[,] . . . got out of the car and tried to run to a

---

[6]  Milan attached an Affidavit of Probable Cause sworn by Defendant Dever as Exhibit A to the
Complaint.  (*Id.* at 14-15.)  The Affidavit of Probable Cause sets forth that the initial police
vehicle in pursuit of Milan was driven by "Officer Devlin" and not Defendant Dever.  (*Id.* at 14.)
It also makes clear that Defendant Dever did not "catch up" to Officer Devlin and the "fleeing
vehicle" until "the driver of the fleeing vehicle was already in custody[.]"  (*Id.*)

house for help[.]" (*Id.*) Milan claims that he was then "tackled by multiple police officers and assaulted and stunned with a stun gun, many times[.]" (*Id.*) Milan specifically alleges that "he was facedown during this assault[,]" and that "he was not resisting, his hands were behind his back, and he was screaming for the officers to stop beating him." (*Id.*) Milan contends that he was then "violently picked up by his wrists while his hands were cuffed behind his back" and he was "pushed back to the ground on his buttocks." (*Id.*) According to Milan "at least twenty police officers . . . watched this assault and did nothing to stop it from continuing[.]"[7] (*Id.*) Milan claims that he was then falsely arrested for "a list of criminal charges" and taken to Chester County Prison in order to "cover up the assault by police officers[.]"[8] (*Id.* at 6.)

The public docket for Mr. Milan's underlying criminal proceeding related to the events described above reflects that he was charged with the following: four counts of aggravated assault, one count for flight to avoid apprehension, one count for resisting arrest, two counts for recklessly endangering another person, one count for fleeing or attempting to allude an officer, one count for DUI, one count for reckless driving, one count for careless driving, one count for driving with a blood alcohol count over .02 while his license was suspended, one count for driving an unregistered vehicle, two counts for use or possession of drug paraphernalia, and a multitude of additional traffic violations for failing to keep right, to obey duties at a stop sign,

---

[7] In support of his allegations, Milan asserts that the "entire incident was captured on MVR footage[,]" and that "pictures were taken by West Grove EMS and Oxford EMS of his facial and back injuries." (*Id.* at 5-6.) He also claims that his "current inmate photo identification displays the injuries sustained to his face from the incident[.]" (*Id.* at 6.)

[8] Milan asserts that "he has been getting treatment for the injuries he sustained, including . . . [a] permanent injury to his left hand, but due to his incarceration the medical treatment isn't sufficient and his situation is degenerative." (*Id.* at 6.) In light of the fact that Milan has only named Defendants who were involved in his arrest and the associated law enforcement agencies, the Court does not read Milan's Complaint to assert a claim for deliberate indifference to serious medical needs against any prison officials at Chester County Prison.

and to use turn signals. *See Commonwealth v. Milan*, CP-15-CR-0003459-2019 (Chester C.P. at 2-3). The Affidavit of Probable Cause prepared by Dever in support of those charges, which is attached to Milan's Complaint, states that Milan committed the offenses with which he was charged during the police pursuit and that drugs were found after a consensual search of Milan's car following the pursuit. The docket also makes clear that Milan is currently awaiting trial on these charges which was set for November 9, 2020, but does not appear to have moved forward on that date. (*Id.* at 1, 16-17.)

Based on these allegations, Mr. Milan seeks to assert legal claims for "illegal stop, false arrest, beating and malicious prosecution" in violation of his constitutional rights. (ECF No. at 8.) He contends that these events constitute "cruel and unusual punishment, and due process violation(s) under the Fourth, Eighth and Fourteenth Amendments[.]" (*Id.*) Milan requests relief in the form of: (1) a declaratory judgment stating that Defendants violated his constitutional rights; (2) an injunction ordering Defendants not to take "retaliatory action related to" Milan's "pending criminal legal matter involving the Defendants[;]" (3) $500,000 in compensatory damages for the permanent injury to his left hand which limits his future working ability as a professional painter; (4) $200,000 in compensatory damages for "pain and suffering, mental and emotional damage[;]" and (5) $1,000,000 in punitive damages, plus costs and other relief as he is entitled. (*Id.* at 9-10.)

## II.    STANDARD OF REVIEW

The Court will grant Mr. Milan leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[9] Accordingly, 28 U.S.C. §

---

[9] However, because Milan is a prisoner, he is obliged to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint

fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is

governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which

requires the Court to determine whether the complaint contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations and generalized statements

do not suffice to state a claim.  *See id.*  As Milan is proceeding *pro se*, the Court construes his

allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

In the Complaint, Mr. Milan seeks to bring claims for violations of his civil rights

pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought

in federal court.  Section 1983 of Title 42 of the United States Code, that provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the

alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Moreover,

"[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A.    Claims Against Local Police Departments

Mr. Milan names both the Oxford Borough Police Department and the West Fallowfield Police Department as Defendants here.  Milan's claims against these two police departments fail and will be dismissed with prejudice.  Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability") (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, Civ. A. No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Accordingly, the OBPD and the WFPD are not proper Defendants in this case under Section 1983 and all claims against them will be dismissed with prejudice.

### B.    Claims Against the Avondale State Police Barracks

Mr. Milan also seeks to sue the ASPB, a division of the Pennsylvania State Police, and several Pennsylvania State Troopers in their official capacities.  The Eleventh Amendment bars suits against a state and its agencies in federal court which seek money damages.  *See Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  With respect to the Pennsylvania State Police, the Third Circuit has held that "the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity."  *See Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)). Similarly, suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).

As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, Milan's claims against the ASPB are essentially claims against the Pennsylvania State Police, which are barred by the Eleventh Amendment, and the Court will dismiss those claims with prejudice.  The same is also true for any official capacity claims brought against Corporal James Wisnieski, Officers John Doe Number 3 and Number 4 of the ASPB.  *See Atkin*, 432 F. App'x at 48 (concluding that the Eleventh Amendment also barred a plaintiff's Section 1983 suit against a Pennsylvania State Trooper sued in his official capacity) (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *see also Will*, 491 U.S. at 71. Accordingly, the Court will similarly dismiss these official capacity claims with prejudice as well.

C.       **Official Capacity Claims Against Local Police Officers**

Mr. Milan seeks to bring § 1983 claims against Officers Dever and Devlin of the OBPD, Corporal Eric Hughes of the WFPD, Officer Lowrey, and Officers John Doe Number 1 and Number 2 of the New Garden Township Police Department in their official capacities. Claims against city officials named in their official capacity are indistinguishable from claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. In other words, Milan's official capacity claims against these officers are effectively claims against the various municipalities which employ them.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in

the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 f.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Here, Mr. Milan has not pled facts sufficient to state a plausible *Monell* claim. Milan's primary relevant allegation is that the officers engaged in the vehicle pursuit did not follow "a general order of vehicle pursuit[.]" (ECF No. 2 at 8.) Milan further contends that this failure by the officers is "evidence that the police subordinates were not properly trained by their supervisors which makes the police department also liable for violating" Milan's rights. (*Id.*) Specifically, Milan points to a policy regarding vehicle pursuits from the West Fallowfield Township Police Department.[10] This policy is allegedly that of just one municipality involved in the vehicle pursuit. Milan's Complaint is thus devoid of allegations against the other municipalities involved here.

As to the policy regarding vehicle pursuits from the West Fallowfield Township Police Department, Milan does not allege that this policy resulted in a violation of his constitutional rights. Rather, he alleges that the failure of the officers to follow this policy resulted in a

---

[10] Attached to Milan's Complaint as Exhibit D is a purported copy of section 3.21 of the West Fallowfield Township Police Department Official Police Manual entitled "Vehicle Pursuit." (ECF No. 2 at 25-28.)

violation of his rights.  Such an allegation is insufficient to support a claim of municipal liability under *Monell*.  Additionally, Milan fails to allege that the officers' failure to follow the written policy was a customary practice by officers in any of the involved departments that resulted in a violation of his rights sufficient to state a plausible claim here.  *See McTernan*, 564 F.3d at 658. Milan's conclusory allegations and generalized statements are not adequate to state a plausible *Monell* claim against any of the relevant municipalities.  *See Iqbal*, 556 U.S. at 678. Accordingly, Milan's official capacity claims against the local police officers will be dismissed without prejudice.

> **D.  Claims for "Illegal" Stop, Police Vehicle Pursuit, False Arrest, False Imprisonment, Excessive Force, and Malicious Prosecution**

Construing his Complaint liberally, Mr. Milan's remaining claims, all of which are against individual police officers, assert violations of his Fourth and Fourteenth Amendment rights arising out of law enforcement's initial attempt to stop his vehicle and the subsequent vehicle pursuit, as well as his arrest, detention, and prosecution.  As set forth below, the requisite elements for each of these claims and the factual allegations Milan asserts in support thereof, are extensively intertwined – both legally and factually – with  the issues that await resolution in Milan's ongoing state court criminal proceedings in the Court of Common Pleas For Chester County.  Milan is still awaiting trial on the charges arising out of the events of August 20, 2019, and the resolution of these charges will  impact the viability of the claims he seeks to assert in this civil action.

With respect to Milan's claims regarding law enforcement's initial attempt to stop him, the Fourth Amendment requires that in order to conduct an investigatory stop, a police officer must have at least reasonable, articulable suspicion based on his experience and observations that criminal activity is afoot.  *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  When Milan responded to this

11

attempted stop of his vehicle by continuing to drive, the subsequent police pursuit began.  "[A]
police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning
of the Fourth Amendment."  *See Cobb-Leavy v. Borough of Yeadon*, Civ. A. No. 18-1069, 2018
WL 4252385, at *2 (E.D. Pa. Sept. 5, 2018) (citing *County of Sacramento v. Lewis*, 523 U.S.
833, 844 (1998).  "A person is seized for Fourth Amendment purposes only if he is detained by
means intentionally applied to terminate his freedom of movement."  *Berg v. Cty. of Allegheny*,
219 F.3d 261, 269 (3d Cir. 2000); *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 n.1 (3d Cir.
1999).  Accordingly, with respect to the police pursuit itself prior to his arrest, Milan must look
to the Fourteenth Amendment, not the Fourth Amendment, for constitutional protection.  *Lewis*,
523 U.S. at 844 (1998) (analyzing the claim of injury to bystander as part of police pursuit under
substantive due process).  To prevail under the Fourteenth Amendment, Milan must show a
substantive due process violation.  To show such a violation, he must allege that the
governmental conduct was so arbitrary, brutal or offensive that it "shocks the
conscience."  *Id.,* 523 U.S. at 845–847.  "[H]igh speed chases with no intent to harm suspects
physically or to worsen their legal plight do not give rise to liability under the Fourteenth
Amendment." *Id.* at 854;  *see also Davis*, 190 F.3d at 170 n.2 (noting that under *Lewis*, "if a
police officer is justified in giving chase, that justification insulates the officer from
constitutional attack, irrespective of who might be harmed or killed as a consequence of the
chase").

   Shortly after the vehicle pursuit had concluded and Milan exited the vehicle, he was
placed under arrest.  To state a claim for false arrest under the Fourth Amendment, a plaintiff
must allege facts establishing that he was arrested without probable cause.  *See Orsatti v. N.J.
State Police*, 71 F.3d 480, 482 (3d Cir. 1995).  "[P]robable cause to arrest exists when the facts

and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. To state a claim for false imprisonment, a plaintiff must establish that he was unlawfully detained, which, in the context of an arrest, generally depends on whether the detention was supported by probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). Milan also claims that during the course of his arrest, the officers engaged in excessive force in violation of the Fourth Amendment. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.") (citing *Graham*, 490 U.S. at 395). "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, . . . and certain factors, including: 'the facts and circumstances of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (citations omitted).

Although Mr. Milan is still awaiting trial on the related criminal charges, Milan seeks to bring a claim for malicious prosecution. "A malicious prosecution claim under § 1983 includes" the following four "elements of a malicious prosecution claim under Pennsylvania law[:] . . . that the defendant '(1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff.'" *Hartpence v. Madison Twp.*,

617 F. App'x 158, 161 (3d Cir. 2015) (citing *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993)); *see also Kelley v. Gen. Teamsters, Local Union 249*, 518 Pa. 517, 544 A.2d 940, 941 (1988). Additionally, "in order to state a malicious prosecution claim under § 1983, a plaintiff must [also] allege facts sufficient to show a plausible 'deprivation of liberty consistent with the concept of seizure.'" *Hartpence*, 617 F. App'x at 161 (citing *Donahue v. Gavin*, 280 F.3d 371, 380 (3d Cir. 2002) (quotation marks omitted).

Because the charges against Milan arising from the events of August 20, 2019 remain pending, and because the circumstances surrounding the attempted stop, the vehicle pursuit, and Milan's arrest may affect the disposition of those pending criminal charges, this Court will stay Milan's claims for illegal stop, the vehicle pursuit, false arrest, false imprisonment, excessive force, and malicious prosecution until the underlying criminal case has been resolved. *See Wallace v. Kato,* 549 U.S. 384, 393–94(2007) ("If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); *See also Dalal v. N. Jersey Media Grp., Inc.*, Civ. A. No. 13-1257, 2014 WL 2691698, at *11 (D.N.J. June 13, 2014) ("[T]he Third Circuit and this Court have consistently held that a § 1983 damages claim for alleged Fourth Amendment violations should be stayed where the constitutional issues are likely to be litigated in a parallel pending state criminal prosecution." (citing cases)).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Mr. Milan leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Milan's claims against the OBPD, the WFPD, the ASPB, and his official capacity claims against Corporal James Wisnieski and Officers John Doe Number 3 and Number 4 of the ASPB are dismissed with prejudice.  Milan's official capacity claims against the local police officers will be dismissed without prejudice at this time. With respect to Milan's remaining claims under the Fourth and Fourteenth Amendments brought against the local police officers in their individual capacities regarding the attempted stop, the police vehicle pursuit, false arrest, false imprisonment, excessive force, and malicious prosecution, the Court will stay this case until the underlying criminal case in the Court of Common Pleas for Chester County is resolved.  At this time, Milan's Motion to Appoint Counsel is denied without prejudice.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An appropriate Order follows.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

_____

**GERALD A. MCHUGH, J.**

15